The case is number 1268, Shuford v. Wilkie. Mr. Cameron. Yes, Your Honor. Thank you. Your Honor, this appeal involves the legal issues of whether the Veterans Court and the Board had the subject matter jurisdiction to decide Mrs. Shuford's appeal in the way that they did. Both the Court and the Board denied her earlier effective dates for the granted accrued benefits claim. And they did so in what we believe is an improper manner in reconsidering the VA's prior grant of the service connection issue. We believe that there's no legal authority for doing so and that they both acted without jurisdiction in an ultra-virus manner. The VA had clearly granted Mrs. Shuford's claim on the service connection issue and she appealed only the earlier effective date issues. The Board's errors and the Veterans Court's errors consisted primarily of misinterpreting the effective date statute and regulation, particularly the regulation 3.400, to essentially interpret when entitlement arose to mean when service connection arose. And we believe that that's a misinterpretation of law because there's a significant difference between when service connection arose and when entitlement under the effective date regulation arose. Entitlement under the effective date regulation means when the disability was manifested and diagnosed. And that's quite a bit different from the issue of when service connection arose. In fact, I believe that when service connection arose simply means when the VA granted service connection. So we don't really believe that there's any legal basis for the misinterpretation and for the reconsideration of the service connection issue. This is Judge Toronto. Can I ask you first a very narrow and specific question? Certainly. The Board refers to the 2014 opinion of Dr. Desser as a VA medical opinion. Did the VA solicit that opinion? Did you solicit it? No, no, no. It's not a VA opinion. It was a private opinion. Okay. That was what the rest of the record suggested to me. So I was a little bit bewildered about that reference. Let me ask you another question. On what law did you rely for your assumption that the Board, when asked to decide the date of eligibility, was bound by the subsidiary determination of service connection from the regional office, notwithstanding that there are, I guess, statutory provisions relevant here that say the Board is supposed to base its decision on the entire record in the proceeding and consideration of all the evidence and material record and applicable provisions of law, which, if there were nothing else, might well suggest that the Board was right in thinking that when asked to determine the date of eligibility, it was free to decide an issue as to service connection that was contrary to the way the regional office had decided it. What do you mean by date of eligibility? You asked the Board to – I'm sorry, not eligibility. I'm sorry. Effective date. I'm sorry. Okay. The effective date. You used the wrong word. I'm sorry. The effective dates are controlled by the statutes and the regulation at 3.400, which simply provides that it will be – the effective date is required to be the latter of the date of eligibility. The latter of the date of the application or the date when the disability – when entitlement arose. And that means when the disability began. And in Mr. Shuford's case, his disability began, you know, well before his application was filed. So, you know, his effective date should have been the date of his 1977 application. And are you asking me why the Board shouldn't have gone back behind the service connection decision or should have gone behind the service connection issue by the regional office? What made – what was the legal authority for saying that the Board could not ask the service connection question when it was being asked by you to grant many years more of benefits? Okay. All right. We believe that the Board was bound by that – the prior service connection decision because, you know, no one appealed it. Mrs. Shuford, you know, did not appeal it. There was no authority to do that. I mean, the system is based on this notion that the VA – that the Board decides appeals of issues that were denied. And the service connection issue in this case was clearly granted. It was granted based upon the VA's implicit and explicit findings that she had properly proved that the Veteran was entitled to benefits based on the evidence that had been submitted prior to his death. So, I mean, this whole process is inconsistent with the notion that the Veteran or the claimant is entitled to two bites at the apple. I mean, if the VA denies service connection, you know, she can appeal. But if the VA – but the Board – I mean, the VA cannot appeal itself. Or on the other hand, if, you know, if service connection is granted for the VA, then she has no reason to appeal that issue. Is your understanding that the Secretary could have, in fact, appealed the service connection determination under the CUE standard? A clear and unmistakable error. Could the Secretary have appealed the grant of service connection, the service connection issue? Yes. No, I don't believe so, because it's a favorable decision. I think that's inconsistent with the, you know, entire system. I guess my understanding has been – maybe just correct me if I'm wrong – under the clear and unmistakable error standard. Is that wrong? I think that there are in limited cases. For example, in cases of fraud or, you know, very rare cases, I think that the VA can do that. What provision of the statute talks about the VA's right to appeal? In that limited context? Yeah. I don't recall that. I didn't review that, to be honest with you, because I didn't believe it applied in this case. Because, you know, I didn't see any evidence that, you know, there was evidence of fraud or any improper action here. Okay, but I guess your argument, to put the bet's face on it, is that what the board did was to effectively allow the VA to appeal a decision that was favorable to the veteran, right? That's correct. That's right. Well, the board, you know, did it on its own, essentially without notice to anyone. And the first indication we had, of course, was the board's decision that they were doing that. But that's correct. But what the board did was to not extend the effective date to that which Mrs. Schubert was requesting. Isn't that right? They didn't change the question of entitlement otherwise. That's right. The board addressed the – the board did not grant her earlier effective date, denied an earlier effective date. But it denied her earlier effective date, essentially without looking at the evidence in the record, which proved that his hypertension condition existed prior to 2001. That is to say that the medical evidence in the record that proved that his entitlement under 3.400 arose prior to 2001. So – Okay. Let's hear from the other side, and you have rebuttal time. Okay. Thank you. Thank you. Mr. Hellman. Good morning, Your Honors, and may it please the court. This court should dismiss the appeal here for lack of jurisdiction because – It's 38 U.S.C. 7252A, Your Honor, that says the secretary may not seek review of veterans' board decisions. Okay. So I guess the argument here is that when the board inquired into the correctness of the service connection determination made by the RO, that was effectively allowing the VA to appeal a decision favorable to the veteran. So what's your response to that? Our response is that that's a mischaracterization of what happened. Similar to what Judge Newman pointed out previously, the benefits here were granted to Mrs. Shuford, and those benefits are not at issue. What Mrs. Shuford was asking for was an earlier effective date for additional benefits, and it was that earlier effective date that the board denied, and the board and the veterans' court here clearly looked at a different provision, a statutory provision, 5121, which talks about accrued benefits that a claimant is entitled to based on the benefits that would have been due to the veteran. The veteran here and Mrs. Shuford, as an accrued benefits claimant, did get benefits for Mr. Shuford's HCVD. Whether that was correct or not is something that the secretary can't appeal, as we just pointed out. Right. But just to be clear, I mean, your position is, and it seems to me, I guess I understand the board decision to say we're not taking away the benefits you got, but we are rejecting a necessary premise for those benefits. And in rejecting them, we will not extend them. We're going to leave in place what you got. But had the RO followed the law, according to the BVA, there would have been no benefits at all. The heart benefits, not the other ones. Right? That's an implication of what the board said, but I think because of the statutory requirements that once the benefits are granted, the secretary can't appeal them, the effect is that it could include- Yes. Why doesn't that imply what I think is now, since 2017 and 2019, under the Appeals Modernization Act, maybe is even more expressed, that in the absence of clear and unmistakable error, the board really is bound by a specific service connection determination, an issue determination, when it's pro-veteran? Well, First Your Honor, Ms. Schubert does not argue that in her brief. I understand. I don't think the language can be read as broad as to say that the VA is bound on all the issues. I think the- I realize I'm moving around a little bit. Would you agree that under the Appeals Modernization Act, new Section 5104, Cap A, would in fact impose a standard that says, Any finding favorable to the claimant, as described in 5104 before this title, shall be binding-any finding-shall be binding on all subsequent adjudicators within the department unless clear and convincing evidence-that's the statutory language-is shown to the contrary to rebut the favorable finding. And then the VA, in 2019, adopted a new implementing regulation, 3.104C, which translates clear and convincing evidence into clear and unmistakable error. And it's done at the level of finding, not at the level of concrete award. And I guess one question I have is, would that language produce the result that Mrs. Schubert is arguing for here, namely that in the absence of a CUE finding, which was not argued for or made by the BVA, the BVA really was bound by the ROC to impose service connection findings, even though it was made on an illegal basis? Your Honor, again, the caveat is that this issue hasn't been briefed and the Appeals Modernization Act doesn't apply to Mrs. Schubert's claim here because it was enacted afterwards. Can I ask you about that? I saw in some briefing, I think, that you all filed in another case some reference to the VA having offered legacy claimants an opt-in choice to opt into the Appeals Modernization Act system. Was that done here? Could it have been done? Could it be done now? Nothing in the record here reflects that it was done. Certainly, Mrs. Schubert has not suggested or tried to opt into it. I am not entirely certain of what the criteria are for opting in. My understanding is that there are several new tracks created by the Appeals Modernization Act. The old claims continue along their track. There's a track for new claims, and then there may be this sort of hybrid track. I'm not certain as to what one has to do to opt into that or become a part of that. That's not an issue here, and Mrs. Schubert hasn't made those arguments. I can't give you a conclusive answer on that, unfortunately, Judge Stronto. I'm sorry. Some of this is just my trying to understand aspects of the statute that I don't know, like the back of my hand. One of the things the AMA did was to repeal a statutory provision, 7106, which said that application for review on appeal may be made within the one-year period prescribed in 7105 by officials of the department, which suggests that at least until it was repealed, the secretary could actually appeal to the BVA. Do you know anything about this provision? The secretary can issue opinions that are supposed to be binding on the board, so if the secretary disagrees with a particular outcome, he can try to effect change that way, but certainly at the board level and below, the secretary is very limited in what he can appeal. You're not aware that before it was repealed, 7106 was ever actually used? I have not looked into that question, Your Honor, but I have not seen anything that suggests to me that the secretary certainly didn't invoke it in this case, and I'm unaware of any cases where the secretary has invoked that. What is the citation to the regulation that governed the secretary's right to appeal before the new statute? I believe Judge Toronto was referring to 38 CFR 3.105. It's a 3.105. I'm not sure I answered your initial question, Judge Toronto, about how the Appeals Modernization Act provision would apply here. The question of effective date for additional benefits is different than the grant of benefits here to the extent that the board was required to look at it as a separate statutory entitlement and examine the statutory language. That says you have to look at the evidence in the file at the date of death. Nobody disputes here that at the date of death, there was no medical opinion linking the hypertensive cardiovascular disease to Mr. Shupert's psychiatric disorder. The board and the Veterans Court applied the straightforward statutory language to the fact of the case and found that Ms. Shupert was not entitled to an earlier effective date. I think Mr. Cameron has put aside right now the merits of the jurisdictional limit. It was a great surprise when the BVA went ahead and made its own determination of service connection, putting aside Dr. Desser's evidence. Maybe the suggestion is, or I don't remember, maybe even the express argument was that there was a due process notice issue that he never got the chance to brief to the BVA that service connection really should be found. Namely, the heart problem, psychiatric disorder connection, which is I think what this is all about, should be found even if you did not have Dr. Desser's 2014 declaration and that he was never really given a fair chance to brief that before BVA decided it. What do you say to all of that? Well, Your Honor, I just want to correct something or disambiguate something in your question. I think there are two separate issues here. One is the psychiatric disorder, which is not at issue here, the service connection, and the effective date for that is not at issue. What's at issue is the linkage of that to the hypertensive cardiovascular disease and heart problems. That's what I meant. And I think BVA said that the only basis in the record on which that connection could be made was evidence that postdated Mr. Shuford's death, namely the 2014 Dr. Desser declaration or report. That's correct. Certainly, the board said that, so Mr. Cameron, Mr. Shuford's counsel throughout these proceedings had notice of that by the time the case was at the Court of Veterans Claims. Right, but the Court of Veterans Claims does not get to make factual findings. So the question is whether he had noticed that that was an issue before the BVA decided it. Well, given that this is a pro-veteran system and it's somewhat one-sided, Mr. Cameron submits evidence and the BVA examines it. It's hard to say he didn't have notice, but even if there was some sort of lack of notice, for lack of a better term, Mr. Cameron doesn't point to anything to indicate that that lack of notice prejudiced his client. There's no additional evidence that he points to that he says he would have submitted had he had noticed. Certainly, any error here would be deemed harmless there because aside from the 2014 Dr. Desser report, there's nothing else establishing service connection. Did the Veterans Court address this lack of notice issue? The Veterans Court, I don't know, Your Honor. The due process, the so-called due process argument wasn't, I don't believe was raised at the Veterans Court either. I think this is the first time it's being raised and certainly we would first argue that it's waived because it wasn't preserved. Due process and constitutional claims would stand on a different foot in terms of this court's review because it's not precluded by 7292 from only looking at the interpretations of law, but there is no prejudicial error here. At the very least, that's the test that applies. Well, I don't think it's up to us to make a determination of prejudicial error. Waiver is a different matter. Let me, before we completely run out of time here, come back to 3.105. I'm not understanding what this regulation has to do with this situation because it's talking about reopening final decisions here and we don't have a final decision of the RO since there was an appeal from the decision. Right, and to answer your question, Judge, the parties aren't arguing this under 3.105. I believe it went to Judge Toronto's broader questions about the capabilities of the Secretary to appeal certain findings. Okay, but what I'm confused about is that the argument here is that the Secretary could not appeal a favorable finding. I'm trying to figure out what statute or regulation governs the Secretary's right, that is before the new law, governs the Secretary's right to appeal an aspect of an RO decision. The statute, as Judge Toronto pointed out, is directed only to appeals to the Veterans Court. 3.105, it seems to me, is only dealing with final decisions, which this is not. And so what is the provision that governs the Secretary's right to appeal from an RO decision to the Board? Your Honor, I don't believe there is a provision that allows for the Secretary to appeal an RO decision to the Board. The Veteran is the one who has the right to appeal an unfavorable decision. It's not the statutory or regulatory limit on the right to appeal, it's just that the statute and regulation doesn't confer any right to appeal. That's my understanding. I don't think there's a passport for the Secretary to appeal it under the statute or the regulation, which would have to come under a statute. Absent an explicit right in either statute or regulation, the Secretary doesn't have that ability. But because the issue wasn't briefed, I'm not... I'll finish with that, and I have one final question. Yes, Your Honor. Again, because the issue hadn't come up in the party's briefing, it would certainly be waived, and nobody here is arguing that that statute was in play. Well, okay. Well, let me tell you what's bothering me here is that apparently the question was raised that perhaps it wasn't correctly decided in the first place, even though it couldn't be appealed, and therefore the request for an earlier effective date, even if otherwise supported, at least arguably supported by the facts, should not be given any favorable review. Isn't that where all of this takes us in terms of what's appealed? Or it wasn't that it was appealed, but it had to have been criticized. It certainly would not have been criticized by Mrs. Shuford. Yes, Your Honor. And again, whether the initial conferral of benefits on Mrs. Shuford was correct or not, that decision is not something that is being challenged or the benefits being taken away from Mrs. Shuford. What she sought were additional benefits in the form of an earlier effective date, and the VA is not required to perpetuate an error that the regional office made and continue the award of benefits simply because there was a mistake in the initial award. How do they know it's an error unless the VA raises it as an error, which says we can't appeal it, but you got it wrong? Well, the VA is not reevaluating that initial decision. The board looked anew at the claim for an entitlement for an earlier effective date, as it's required to do, because it's a separate statutory entitlement. The Volkin case that we cited speaks to that. And based on that review, the board concluded that there was no entitlement here to an earlier effective date based on the plain language of 5121 that says you look at the veteran's file at the time of death and the evidence in that file. The prior decision granting Mrs. Shuford benefits for both the psychiatric disorder, that's not an issue here. It also granted her benefits for the hypertensive cardiovascular diseases linked to the psychiatric disorder. That's not being challenged. But what she's now seeking is additional benefits on top of that, and the VA is correct to decline to award those. And this court doesn't have jurisdiction to review that application of law to fact, and for those reasons, we ask that the decision be – that Mrs. Shuford's appeal be dismissed for lack of jurisdiction or may alternatively be affirmed. Okay. Any more questions for Mr. Hellman? No. All right. Thank you, Mr. Cameron. You have your rebuttal time. Okay, Your Honor. Thank you. I would like to respond briefly to these points that he's raised. Mr. Cameron, before you begin, did you represent the claimant before the Veterans Court? I did, Your Honor. And did you raise before the Veterans Court this question of your ability to address the correctness of the RO's decision about entitlement? Yes, Your Honor, we did. And I think we take the position that there was – under Section 5121, Mrs. Shuford was required to meet her burden of proving her case based on the evidence that was in the Veterans file at the time of his death – Veterans death. And she did so, and that's the reason that the VA granted the claim. But did you argue to the Veterans Court that she hadn't had an opportunity to argue this issue before the Board because it was raised by the Board's corresponding? We did. Where? Can you – is that in the record here? Is it in the appendix? It should be in the appendix. I should have referred to it in my brief also. If I could submit that to you later. Yes, you can send us a letter if you find something that we need to know. I would like to respond to this question about the Board's analysis. You know, I'm not sure – I've never seen a case where a Board – where the VA has actually tried to appeal a decision, an RO decision, you know, except in the case of a fraud or some more incident or acute claim. So I think it's very unusual. But we also argued that the Board's analysis of this issue after the VA's original favorable finding was the imposition of a second burden of proof that the law doesn't really require. It requires only that she prove it one time. And, you know, we believe that she did prove it. That's why the VA granted the claim. There was also evidence in there, in the record. I think it was from Dr. Lopez's medical opinion where he reviewed a prior medical opinion and he concluded – his nervousness and probable stroke back to service. And so that opinion, relating the stroke back to service, essentially relates hypertension back to service. But in any event, we believe that there was evidence in the file. First, we believe that the Board was improper in reconsidering, you know, this issue that she had fully proven before the original office. Well, they didn't change it, whether they thought about it or not. It was not changed. Isn't that correct? That's right. It was not changed. It was changed in the sense that under the original grant, she was – and under the statute, she should have been entitled to all the accrued benefits that were owed to her husband at the time of his death. But, you know, because the agency ignored the 1977 application, they granted his benefits effective 2001. But when the Board essentially revised the decision, the Board said, well, yeah, you know, the original office granted this, but we're not going to move it back because we don't think, you know, that she really proved her case. And so essentially the Board's decision effectively denied her the benefits between 1977 and 2001 because the Board didn't think she had proved her case, you know, even though the original office did. I mean, so – but the point is there's really no legal basis for the Board to reconsider an issue that was favorably, you know, granted to her. Because I think, to answer your question, Judge Newman, the Board's decision did adversely affect her, and it essentially did reverse or revise the VA's grant. Because if the VA had seen the 1977 application in the file, they should have assigned a 1977 effective date. But then after the Board's decision, the Board said, no, we're not going to move the effective date back because we don't think it was properly granted. So the Board did essentially revise that favorable decision and deny her benefits that she should otherwise have been entitled to. Okay. And anything else we need to know? Any final words? Right. On this lack of notice of the service connection issue, you know, when we appeal the effective date issues, you know, we expected to argue and we did argue about entitlement to early effective dates. But we had no notice. Okay. We had no notice about the Board reconsidering the service connection question. If we had, of course, we couldn't have submitted more evidence. But we could have submitted arguments that may well have convinced the Board that it was not appropriate to, you know, requirement that she had to prove in order to get the benefit granted initially. So I think that's pretty much it. But I think that the Board and the Veterans Court also seriously confused the question of entitlement to service connection and entitlement to under 3.40, 400. And therefore said that since she believes she wasn't entitled to service connection at the time of his death, she shouldn't be entitled to an early effective date under 3.40, 400. So I think that there's clearly a misinterpretation of the regulation and the statutes. Okay. Thank you. Any more questions for Mr. Conlon? Nope. No. Okay. Thank you very much. Thank you. Thanks to counsel for both sides. The case is taken under submission. And that completes this panel's argued cases for this morning. Thank you. The Honorable Court is adjourned from day to day.